Carroll,
Feb. 7, 1939. } No. 3009.

THOMAS E. MALLOY *& a. v.* CECIL R. HEAD, *Adm'r & a.*

*Arthur E. Kenison, Robert W. Upton* and *Richard F. Upton* (*Mr. Richard F. Upton* orally), for the plaintiffs.

*William N. Rogers,* for the defendant administrator, furnished no brief.

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Burns* orally), for the defendant company.

PAGE, J. The policy was a contract to indemnify the plaintiffs, with certain exceptions not material here, against loss for liability imposed upon them by law for damages because of bodily injuries to any person, including death resulting therefrom. The company also covenanted to defend any action against the assured seeking to recover such damages. The contract was expressly "subject . . . to the following Conditions," among which was this:

"D. In the event of accident written notice shall be given by or on behalf of the Assured to the Company or any of its authorized agents as soon as is reasonably possible thereafter. Such notice should contain information respecting the time, place, and circumstances of the accident, with the name and address of the injured and any available witnesses. If such information is not reasonably obtainable, particulars sufficient to identify the Assured shall constitute notice. The Assured shall keep the Company advised respecting further developments in the nature of claims or suits when and as they come to his knowledge. . . ."

Upon the plaintiffs' own testimony, they learned upon the very day of the accident the time, place, and some of the circumstances of the accident, the nature of the boy's injuries, his name and residence, and the fact of his death. They also then knew the names and addresses of certain available witnesses, though there was no eye-witness of the accident. In fact, they knew everything required by Condition D for the information of the company. It is admitted that they gave no notice to the company, whose agent lived in the

same village where the plaintiffs lived, until after service of process in the administrator's suit on August 5, 1937, substantially ten months after the accident; nor did they take advice of counsel as to what they should do. As far as appears, no person connected with the company had any knowledge of the accident until receipt of the notice finally given in August, 1937.

The stipulation for notice, it has been held repeatedly, is a condition precedent to liability of the company to perform its part of the contract. *Bean* v. *Insurance Co.*, 88 N. H. 416, 419; *Kilgore* v. *Association*, 78 N. H. 498, 501; *Maynard* v. *Insurance Co.*, 76 N. H. 275, 276; *Davis* v. *Insurance Co.*, 73 N. H. 425; *Johnson* v. *Casualty Co.*, 73 N. H. 259; *Tasker* v. *Insurance Co.*, 58 N. H. 469; *Leach* v. *Insurance Co.*, 58 N. H. 245, 246; *Patrick* v. *Insurance Co.*, 43 N. H. 621, 622; *Gooden* v. *Insurance Co.*, 20 N. H. 73. Although it may be more accurate to say that the condition is subsequent, the change in the adjective will not alter the effect of the condition. *Glens Falls &c. Co.* v. *Keliher*, 88 N. H. 253, 258.

There are recognized exceptions to the rule that non-performance of the condition relieves the insurer. These include agreement by the parties to waive performance, fraud by the insurer, misleading of the insured by the insurer (*Gooden* and *Kilgore* cases); statutory provisions (*Davis* case); impossibility of performance (*Bean* case). There will be further discussion of such of these exceptions as the facts before us require. In the absence of fraud by the defendant, the plaintiffs are presumed to have had knowledge of the condition imposed. *Lauze* v. *Insurance Co.*, 74 N. H. 334, 338; *Gagne* v. *Insurance Co.*, 78 N. H. 439, 440. Their failure to read or, having read, to remember the condition is not such accident, mistake or misfortune as would relieve them from its operation. *Johnson* v. *Casualty Co.*, *supra*.

The plaintiffs, however, contend that they performed the condition substantially. The question for the court was whether they gave notice of the accident as soon as was reasonably possible, and this is a question of fact. *Ward* v. *Casualty Co.*, 71 N. H. 262, 267; *Guaranty Trust Company* v. *Company*, 79 N. H. 480, 483. The court made no findings on this point, but ruled in effect that there was no evidence upon which it could be found that the notice given was seasonable in the sense intended by the parties when they made the contract.

As we construe the contract, the parties intended that notice should be given with reasonable immediacy after the fact of the

accident became known to the plaintiffs. The plaintiffs were not to wait until an investigation disclosed full particulars. Particulars "sufficient to identify the Assured", surely a very sketchy basis for report, were required with reasonable immediacy if fuller information were not reasonably obtainable at the time the report was due. The requirement of prompt knowledge by the insurer that an accident had happened was thus emphasized. The parties contemplated notice apt for that purpose, with no more details than were reasonably available. The time was of the essence. "The purpose of the notice was to put the defendants upon inquiry rather than to give them full information concerning the accident." Delay in giving notice of the accident might prevent the company from learning the truth about it. *Ward* v. *Casualty Co., supra,* 267. But in the case before us, the plaintiffs had pretty full information to disclose. There was not, even on the score of paucity of knowledge, the slightest occasion for delay if we are to take the words "reasonably possible" as having their ordinary meaning. Beyond that, it was clearly the intent of the contract that there should be separate notices in case of accident, claim and suit. The duty to give the first notice did not depend upon the probability that claim or suit would follow the accident; it depended solely upon the plaintiffs' knowledge of the happening of the accident. A notice of the accident which was deferred for ten months, with knowledge of the facts by the assured, and until after the bringing of suit, could not be found to possess reasonable immediacy.

The plaintiffs say, however, that they were excused from giving immediate notice because they had been told by the boy's father, on the day of the accident, "that there was absolutely no blame and that it was purely an accident, and . . . we would never hear any more about it." Moreover, the father said in the presence of the mother that "there was no blame involved; that he blamed nobody . . . it was just probably an act of God." In consequence of these assurances, the plaintiffs claim, they concluded that there would never be any suit and that notice of the accident was not necessary. We shall pass over the question whether these statements bound either the mother or the administrator, and assume for present purposes that the plaintiffs reasonably believed that neither claim nor suit would arise out of the accident.

The trouble with the contention of the plaintiffs, as thus given the fullest possible effect, is that they assumed to become the judges of the prospect for claim and suit, whereas one of the purposes of

the notice of accident is to afford opportunity of the insurer, the responsible party in case the policy is to continue in effect, to decide that very question and to act in accordance with its own judgment. *Ward* v. *Casualty Co., supra*, 267, 268. Compare also *Amoskeag Trust Co.* v. *Insurance Co.*, 88 N. H. 154, 159, 162. The contract is construed to mean that the party to be burdened with the preparation, defence and payment of any judgment must have information upon which to base future action "as soon as is reasonably possible" after the accident. This information is peculiarly within the control of the assured. Therefore the duty is laid upon him to give the notice if he wishes to hold the insurer to liability. If he fails in this duty, he has to assume the burden which normally is his and which the insurer has undertaken only if a reasonable condition is performed by the assured.

The plaintiffs support with a number of authorities their contention that they were excused from giving earlier notice by their reasonable belief that there was no liability, hence that there would be no claim or suit. We are unable to adopt the full reasoning of the cases cited. We can agree with *Minnesota &c. Company* v. *Company*, 173 Minn. 114, and with *George* v. *Surety Co.*, 121 Neb. 647, to the extent of saying that the assured may be excused from giving notice while he is ignorant of the fact that an accident has happened. In an appropriate case it might be said, as was held in *Farrell* v. *Indemnity Co.*, 183 Minn. 65, that even although the assured knows of the accident, yet if he is ignorant of the fact that his property or servant has been involved, the giving of notice will be excused. It would not seem to be a reasonable construction of the contract that would lay upon the assured the obligation to disclose information of which he is justifiably ignorant.

There may be reason, however, to avoid following such cases as *McKenna* v. *Indemnity Co.*, 125 Wash. 28, and *Baker* v. *Insurance Co.*, 118 Conn. 147, which seem to hold that the triviality of the injuries immediately apparent will excuse the giving of notice. The case of *Southern Surety Company* v. *Heyburn*, 234 Ky. 739, appears to reach the conclusion that notice of an accident need not be given until such time as a reasonably prudent man would believe that the accident might give rise to damages. In the *McKenna* case there was the further fact that the plaintiff in the ensuing action for personal injuries stated immediately after the accident that it was his own fault. These cases all involved the question of the reasonable belief of the assured that he was not liable for the accident.

We have assumed that the plaintiffs had a reasonable belief that they were not liable. Yet, in construing the intent of the parties, it might be asked with what reason an assured may believe that there is no liability because the other party to an accident says there is none. It is common for a freshly injured man to say that the accident was not the fault of the assured, only to change his mind later with the full approval of the jury. Such situations continually arise, many of them with no taint of fraud. They are the daily problems of insurers. This is the well-known situation concerning which the parties have contracted. Construing their intention in the light of this circumstance, we repeat that upon the facts presented here, it is not the honest, or even the reasonable, belief of the assured which is the test of his duty to report; it is the existence of the known fact of an accident involving himself, his servant, or his property while under his control or that of his servant. If the assured knows facts which might induce a belief in non-liability, it is his duty to disclose them to the insurer. If the insurer then makes an error of judgment, it is the fault of the insurer and not of the assured. It might be added that if notice of an accident is to be excused because the assured has a reasonable belief that he is not liable, there is danger that notices will usually be untimely. It is notorious that it is a rare defendant who conceives himself to be liable. Since the reasonableness of his belief will be proved satisfactorily to himself, the insurer will too frequently, if the rule contended for be adopted, never have the opportunity of knowing about the accident until the assured is sued. Such a result is one which we cannot conceive that the parties intended to permit.

The plaintiffs cite many cases which hold that the insurer cannot avail himself of delay in giving notice unless he can show that he was "prejudiced" thereby. According to the view of these cases, as we understand them, the restriction ceases to be a condition and becomes a mere promise whose breach has no consequence unless damages can be shown. The view is based upon the rule of construction (not accepted here, *McGinley* v. *Insurance Co.*, 88 N. H. 108) that the contract is to be interpreted most favorably to the assured. There is also the factor of a distinction between a condition precedent and a condition subsequent, not favored by us. The condition is not given legal effect in such cases unless (1) there is an express forfeiture provision, or (2) the insurer can prove that he has suffered damage from the breach. The doctrine of "prejudice" in this sense has no place in a scheme of construction that regards as

a condition what the contract expressly names as such, and attaches to its breach the common-law consequence of forfeiture. Its weakness is that, because legal evidence could rarely be found to establish what the result would have been if seasonable notice had been given, the insurer would usually be deprived of the valuable contractual right seasonably to determine the course best adapted to protect itself. Here lies real prejudice, however imponderable the damages.

The facts before us indicate that the prejudice is not imaginary. Immediately after the accident, the parents of the deceased were not of a mind to make any claim. Sometime within ten months, their attitude was reversed. The insurer, because of its obligations, had the right of prompt access to them. It could not be proved that the defendant could, or could not, have obtained a release if seasonable notice had been given. In that sense, prejudice could not be shown. But the material thing is that there was apparent opportunity to make the attempt, and the insurer was deprived by the plaintiffs' fault of the chance to seek a favorable settlement or to take any other course that its judgment suggested. The design of the policy was that the defendant should have that right. The method to secure it was the giving of notice as soon as possible after the accident.

The final point to be considered is the contention of the plaintiffs that the company waived the breach of condition to give seasonable notice of the accident. The facts are disclosed in the correspondence and are not open to dispute. When the supervisor of the defendant learned of the accident on August 10, 1937, he at once directed one of the company's employees to make a prompt investigation in his territory and to return the file for investigation in another territory. As a part of the directions the supervisor added, "Note our reservation of rights in attached copy of letter to assd" [assured]. The letter referred to was from the supervisor to Thomas E. Malloy, one of the plaintiffs, the named assured. It was dated August 10, 1937, and a copy was introduced, the original of which the addressee was satisfied that he had received.

This letter acknowledged as "just received" a report of the accident ten months earlier, also receipt of the writ in the suit of the administrator against the Malloys. It then admitted that on the date of the accident the company had insurance in the name of Thomas E. Malloy, and added: "but we never received a report of the accident in question. In view of the long delay in reporting the accident we are obliged to make an investigation without prejudice to your rights

or to the rights of the Company and before the date on which this writ is returnable, we will be in a position to advise you relative to our position in the matter."

The investigation by the company covered the facts of the accident, the circumstances surrounding the delay in giving notice of the accident, and the reasons for the writing of the policy in the name of Thomas E. Malloy, whereas suit was against him and Walter Malloy, doing business as the T. E. Malloy Construction Company. During this investigation a representative of the company talked with one of the Malloys, and was informed that the plaintiffs had consulted their own attorney upon service of the writ and that this attorney had taken depositions. The company wrote to the attorney requesting the depositions or copies. The attorney replied that he had advised that depositions be taken, but that none had been given.

On September 9, 1937, the company's adjuster wrote Thomas E. Malloy saying "before we accept this writ as one for defense under your policy with this company may we inquire why this case was not reported to us when the accident occurred or shortly thereafter . . . Please advise when claim was first made upon you for the death of this boy and why we were not immediately notified." There was also inquiry as to whether the defendants in the writ were named correctly. The letter ended thus: "Your prompt attention and answers to these questions will enable us to give you definite information as to whether we intend to accept this under our coverage."

This letter was not answered. Some time later this fact was called to the attention of Walter Malloy, and he called at the company's office. There he went over the entire matter, answered questions and gave a statement. On October 30, 1937, the company's adjuster returned the writ to Thomas E. Malloy, saying: "We regret to advise that we can not give this action defense under our policy coverage because of the long delay in reporting the accident to this company." He called attention particularly to Condition D and stated the company's feeling that its rights had been prejudiced and that the condition must be invoked. Mr. Malloy was advised that the writ would be returnable on the second Tuesday of November (the 9th) and that if he did not have personal counsel appear at that time there would be a default. The letter reached Mr. Malloy on November 1. The next day his personal counsel wrote to the company that Mr. Malloy intended to hold the company to the contract to defend.

There is no doubt that the insurer may waive a breach of the condition and thus remain bound to indemnify and defend. But to

accomplish this result, it must appear that a waiver was in contemplation of the parties. The fact of a waiver must be found from some evidence, and it must appear that the assured was induced to believe that the insurer would not insist upon the condition. *Maynard* v. *Insurance Co.*, 76 N. H. 275, 276. "The silence of an insurance company, upon a defect in the form of the notice, might be very injurious to the assured, but it is not at once seen how the assured could be benefited by notice that he had failed to give information of his loss within the stipulated time, or how he could be prejudiced by the omission." *Patrick* v. *Insurance Co.*, 43 N. H. 621, 623. If, however, the insurers "waive the written notice to which they are entitled, and the insured is thereby induced not to give such notice, there is a clear estoppel." *Lyman* v. *Littleton*, 50 N. H. 42, 47.

The same test was applied in *Tasker* v. *Insurance Co.*, 59 N. H. 438, 445, where it was said that there was no evidence that the defendants waived a condition, because "they did not give him [the assured] to understand, and did not induce him to act upon the understanding, that they waived the limitation. As they did not cause him to believe, or to change his position in the belief, that they waived the limitation, they are not estopped to deny that the suit was brought within the time prescribed by the contract."

"A waiver, ordinarily, is based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it. It does not arise in the absence of evidence of such an intention or such conduct." *Kilgore* v. *Association*, 78 N. H. 498, 501.

There is no evidence in the record that would support a finding of waiver under the rule just stated. The company was not even silent. It did not deny liability to defend upon grounds other than want of notice (*Seely* v. *Insurance Co.*, 72 N. H. 49, 54; *Anderson* v. *Insurance Co.*, 75. N. H. 375, 382), and thus by implication waive non-performance. It did not offer to defend (*Ward* v. *Casualty Co.*, 71 N. H. 262, 268, 269), and thus admit that the policy was in full effect. On the contrary, it informed the assured, as soon as it heard about the accident, that it might, after investigating the circumstances, feel obliged to take advantage of the breach of condition. It renewed the statement on September 9, when specifically calling upon the plaintiffs for information regarding the circumstances of the delay in giving notice. For some time the plaintiffs ignored this clear request, and it was only after a belated call by one of the plain-

tiffs at the defendant's office, pursuant to the request, and his statement then given, that the disclaimer was made, some ten days before the return-day of the writ, and in seasonable time, as far as appears, to enable the plaintiff to make a suitable defence.

The plaintiffs could not be found justifiably to have misunderstood the attitude of the defendant, to have been misled by it except through their own inattention, or to have relied with any reason upon a belief that the company had bound itself to waive their non-performance. The company investigated not only the cause for delay in giving notice, but also the accident itself. But this fact could not properly mislead the plaintiffs, who were told in the beginning that the investigation would be "without prejudice to your rights or to the rights of the Company." At the most, no more was promised than a fair investigation, after which the defendant was to decide the question of waiver of the breach of condition.

The company did not prejudge the question of waiver or imply what it would finally do. That was left in doubt. Meanwhile an investigation of the accident would afford the plaintiffs all due protection against the possibility of either waiver or non-waiver, while at the same time protecting the company if it should turn out that there were excuse for the delay in notice. In view of the expressed reservations made on August 10 and September 9, the plaintiffs were fairly warned that they might have to be prepared to make their own defence. They had ample opportunity to make preparation, and it cannot be found that they were misled by anything that the company or its agents said or did.

It is true that Walter Malloy said that he "presumed all the time that they [the defendant] were shouldering the defense," but this is clearly because, as he testified in the same sentence, he "wasn't very much in on the correspondence or in this particular case on this end of it until the notice came from the company definitely stating that they wouldn't assume the defense." (The correspondence was with Thomas Malloy, the named assured). Not only is there no evidence justifying any such belief by the plaintiffs; it does not appear that the present situation of the plaintiffs is in any way different from what it would have been had the company notified them on August 10 that it would neither indemnify nor defend.

*Judgment for the defendant company.*

All concurred.