# MUNAL CLINIC et al. v. M. O. APPLEGATE, JR., ADM'R, et al.—273 S. W. (2d) 712.

Eastern Section. August 13, 1954.

Petition for Certiorari denied by Supreme Court, December 16, 1954.

Wilson & Worley, and William T. Gamble, of Kingsport, for appellants.

Minter, McLellan & Tipton, of Kingsport, for appellees.

HOWARD, J. This suit for declaratory judgment was filed by the Munal Clinic and its owner, Dr. John Munal, assureds, hereinafter referred to in the singular as complainant, against the defendants, New Amsterdam Casualty Company, W. O. Applegate, Jr., Administrator of the Estate of W. O. Applegate, Sr., and Messrs. Dodson and Dodson, Attorneys of the Kingsport Bar, to determine whether the New Amsterdam Casualty Company, hereinafter referred to as defendant or insurer, was obligated under a policy contract issued to the complainant to defend an action at law filed against complainant by W. O. Applegate, Jr., Administrator, in the Law Court at Kingsport, Tennessee, in which Dodson and Dodson are Attorneys. The bill not only prayed for a declaratory judgment but for temporary injunctive relief which was granted, enjoining the law action until the matters herein were determined.

The bill alleges that on March 20, 1951, the defendant issued to complainant a "hospital liability policy," which was in full force and effect at the time the matters herein arose, the purpose of said policy being,

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any patient or patients of the hospital described in the declarations, arising out of any malpractice, error or mistake occurring in the course of treatment."

The bill further alleges that on June 27, 1952, W. O. Applegate, Sr., was admitted as a patient to complainant's Clinic in Kingsport, Tennessee, and that three days later, on June 30, 1952, he escaped therefrom, and after being arrested by the Highway Patrol was confined in the Kingsport City Jail on a charge of public drunkenness where he died from a heart attack at 4:30 P.M.; that on February 25, 1953, Messrs. Dodson and Dodson, Attorneys for the Administrator, wrote complainant a letter making claim for decedent's death, and that two days following the receipt of this letter, on February 27, the complainant gave written notice to the defendant of the claim, including in the notice all of the information available regarding Applegate's death; that later the defendant, through its attorneys notified complainant that it declined liability because complainant had failed to give the defendant the required written notice "as soon as practicable" as required by the terms of the policy.

The bill further avers that on April 27, 1953, the Administrator filed suit against the complainant in the Law Court at Kingsport for damages in the amount of $35,000 as result of the decedent's death; that the case would stand for trial the week of July 20, 1953, unless enjoined; that complainant would suffer injury and loss if required to defend said action, and that because of the dispute be-

tween complainant and the defendant over the question of defendant's liability under the policy, this suit for declaratory judgment is necessary.

Attached to the bill was a copy of the declaration filed in the Law Court, in which it was alleged that the decedent entered the complainant's Clinic on June 27, 1952, in an "intoxicated or semi-intoxicated condition, was highly nervous and practically bereft of reason, and was also suffering from some sort of heart ailment, and demanded special care and treatment, all of which was known to the defendant"; that irrespective of these facts the complainant negligently put Applegate in a room without an attendant, where windows and doors were easily accessible, and administered to him various sedatives, medicines and drugs and while delirious and irrational he was negligently allowed to escape and roam around outside while physically and mentally unable to care for himself.

The defendant's answer admits that its policy contract was in effect on June 30, 1952, but avers that its obligation thereunder was to attach only upon compliance by the complainant with the provisions thereof; that complainant's notice dated February 27, 1953, was not made "as soon as practicable" as required by the policy which especially provides that the obligations of the defendant are "subject to the limits of liability, exclusions, conditions and other terms of this policy" as provided by the following provisions:

"3. Notice of Injury. When bodily injury occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the bodily injury,

the names and addresses of the injured and of available witnesses.

* * * * * *

"6. Action against company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

The defendant further averred that had the complainant exercised reasonable caution and judgment, it should have anticipated that a claim might be made for the death of the decedent, and that there was no reason why notice should not have been given immediately following his death; that by reason of failure to give such notice defendant was greatly and irreparably injured and prejudiced, and that it was deprived of any opportunity to investigate the decedent's death in a reasonable time after it occurred, and the defendant sought a declaratory judgment in its favor.

Upon the hearing the Chancellor held, among other things, that the defendant was obligated under the provisions of its policy to defend the action at law, and a decree was accordingly entered. From this decree the defendant has appealed to this court, and errors have been assigned complaining that the Chancellor erred (1) in holding that the policy in question required only notice to defendant within a reasonable time after complainant learned that a claim was being filed against him or his clinic; (2) in holding that complainant acted with circumspect and caution, and did everything that was required

under the policy, and that he was not negligent in failing to give notice to defendant at an earlier date; (3) in holding that under the circumstances of decedent's escape from complainant's hospital and his subsequent death, complainant was excused from giving prompt notice because he could not be required to anticipate that a claim might later be made; (4) in holding that "the insurance company has not been prejudiced and will not be prejudiced by being required to defend this suit"; and (5) in holding that the defendant was obligated, under the facts, to defend any action against complainant growing out of the escape of defendant from complainant's hospital and his subsequent death.

The pleadings which have been referred to at considerable length not only state the issues presented, but they also reflect substantially the evidence introduced on the trial of the case.

In holding that the defendant was obligated under the provisions of the policy to defend the action at law, the Chancellor made a finding, in which we concur, a part of which reads as follows:

"On the day of June 30, 1952, Dr. Munal testified and the record will show that the widow or the wife of W. O. Applegate, Sr., entered his clinic where she was treated for several days and that as the widow of the deceased, she at no time gave any evidence of any unkind feeling toward Dr. Munal, but on the contrary, expressed her appreciation for the love and kindness which the doctor had shown to her late deceased husband. He further states that no member of the family, including the children of the late W. O. Applegate, Sr., or any of his friends indicated any displeasure or dissatisfaction with the way and man-

ner in which he had treated the patient while at the hospital.

"Sometime later, approximately seven months later, Dr. Munal received a letter in February, 1953, from the law firm of Dodson & Dodson of Kingsport, Tennessee, calling to his attention the fact that said law firm was in the process of the preparation of a declaration which would shortly be filed in the Law Court of Sullivan County, Tennessee, seeking damages against the said Dr. Munal and the Munal Clinic for an alleged neglect handling of the case of the late deceased W. O. Applegate, Sr.

\* \* \* \* \* \*

"Dr. Munal testified that he cooperated with the insurance company and its local agents and that he gave them the name of all witnesses available and did all in his power to comply with the provisions of the insurance policy which was in effect at that time in particular with reference to notice, so as to place the insurance company on notice that they may be called upon to defend a suit under their contractual liability and under the policy which they had agreed to assume the defense and liability for claims against the said hospital or Munal Clinic in connection with the present case before the Court.

\* \* \* \* \* \*

"The court recognizes the general rule with reference to conditions precedent that must be complied with in the fulfillment of the obligations of the insured under an insurance contract.

"It is the duty, under the law and in good conscience, for the insured to speedily, within a practicable and reasonable time, to communicate to the

insurer any information or any injury or any accident which might give rise to liability.

&ast; &ast; &ast; &ast; &ast; &ast;

"It is the opinion of the Court that what may be a reasonable time in one situation and under one condition, relating to giving notice, may or may not be under different circumstances, that each case must rest upon the person and upon the facts and all of the surrounding circumstances in a given situation.

&ast; &ast; &ast; &ast; &ast; &ast;

"How could the complainant here, Dr. John Munal, be charged with a failure to substantially comply with the insurance policy when a patient was entered in his hospital who did not die on the premises, who received no injury in the hospital and who escaped from the hospital and later died in the city jail some two or three miles in distance from his clinic?

"It is the opinion of the Court that it is not a requirement that Dr. Munal, in this particular case, under these peculiar set of circumstances, could be required to anticipate or assume or believe that some claim would be later filed.

&ast; &ast; &ast; &ast; &ast; &ast;

"The Court is of the opinion that the insurance company has not been prejudiced and will not be prejudiced by being required to defend this suit, that no extra burden would be placed upon the said insurance company, except that which is already placed upon it under its contract, to defend the complainant in any suit under the terms of the policy, while it was still in effect.

&ast; &ast; &ast; &ast; &ast; &ast;

"Based upon all of the facts and all of the circumstances, the Court is of the opinion that Dr. John Munal of the Munal Clinic, acted with circumspect and caution and did everything that could be required under his contract, that he was not negligent, and that he is entitled under terms and provisions of his contract of insurance, to be defended in the Court against any claim that might arise during the time that the insurance policy heretofore referred to was in effect and valid."

■ Under the facts of the instant case, there being no evidence of bodily injury at the time of the escape and death of the decedent, who apparently died of natural causes, there was no reasonable ground for complainant to believe that a claim for damages would arise, and complainant's failure to give defendant notice was not unreasonable or imprudent. Under such circumstances the complainant was not required to give the defendant notice until it was subsequently brought to its attention that a claim was going to be made, which notice the complainant gave the defendant two days after being notified of the claim. The rule applicable here is stated in the following authorities:

In 29 Am. Jur., it says:

"As a general proposition, an accident which has no reasonable relation to the subject matter of the policy or to the act or omission of the insured need not be reported to a liability insurer." Sec. 1114, p. 836.

"The requirement of a liability policy that notice shall be given on the occurrence of an accident does not require notice of an accidental occurrence where no bodily injury is apparent at the time of the acci-

dent, and there is no reasonable ground for believing that a claim for damages will be made, and the duty to give notice does not arise until the subsequent facts would suggest to a reasonably prudent person that a liability might arise." Sec. 1115, p. 837.

 In 45 C.J.S., Insurance, Sec. 1056, page 1281, it says:

"Generally, delay is excusable in the case of an accident which is trivial and results in no apparent harm, or which furnishes no ground for insured, acting as a reasonable and prudent man, to believe at the time that a claim for damages will arise or that the injury is one insured against. In such case notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages."

See also Annotations in 76 A.L.R. 105, 18 A.L.R. (2d) 475.

In Spradlin v. Columbia Ins. Co. of New York, 34 Tenn. App. 17, 232 S. W. (2d) 605, 607, this Court said:

" 'If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy. And this has been held to be true even though the policy provide

that no action can be maintained until after a full compliance with all the requirements thereof.'

*　　*　　*　　*　　*　　*　　*

"Our courts recognize that delay in giving notice and filing proofs of loss within the prescribed time may be excused under certain circumstances. Massachusetts Mut. Life Ins. Co. v. England, 171 Tenn. 104, 100 S. W. (2d) 982. This is in accord with the general rule as laid down in 45 C.J.S., Insurance, Sec. 1066, pages 1295, 1296, where it is said: 'The failure to give notice and proof of death within the time fixed in the policy may under certain circumstances be excused.' We hold the lack of knowledge of the insured (whom we absolve of negligence), excuses the delay."

■ Furthermore, there was no evidence that complainant's delay of nearly eight months in giving notice has prejudiced the rights of the defendant company. There has been no loss or impairment of evidence, and no rights of third persons have intervened. The true rule of laches is that it is not, like limitation, a mere matter of time, but is particularly a question of the inequity of permitting a claim to be enforced; this neglect being founded on some change in the condition or relation of the property or the parties. In other words, it is not merely delay, but delay that works a disadvantage to another. 10 R.C.L. 396; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Parker v. Bethel Hotel Co., 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; Roysdon v. Terry, 4 Tenn. App. 638, 653.

It results that all assignments of error will be overruled and the decree entered below will be affirmed at defendant's costs.

McAmis, P. J., and Hale, J., concur.