**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Melinda E. SHANNON, et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

July 26, 1985.

Permission to Appeal Denied by Supreme Court Oct. 28, 1985.

---

Ray J. Campbell, Jr., and Brian H. Trammell with Kennerly, Montgomery & Finley, Knoxville, for plaintiff-appellant.

Harry Lillard with Lillard & Seivers, Oak Ridge, for appellee Melinda E. Shannon.

Fred G. Musick with Jenkins & Jenkins, Knoxville, for appellee State Farm Mut. Auto. Ins. Co.

OPINION

SANDERS, Judge.

The Plaintiff has appealed from an adverse judgment in its declaratory judgment suit to void coverage under its automobile liability policy for failure of the insured to give timely notice of an accident.

In April, 1983, the Plaintiff-Appellant, Nationwide Mutual Insurance Company, had in effect an automobile liability insurance policy on a 1980 model Pontiac automobile issued in the name of the Defendant-Appellee, Melinda E. Shannon. On April 12, while Melinda was operating her automobile in an easterly direction on Cumberland Avenue at the intersection of 15th Street in Knoxville, she struck the rear bumper of the 1975 Ford Mustang belonging to, and in which Lesa R. Gardner was riding, along with three other people. Melinda did not report the accident to Nationwide or its agent until March 29, 1984, after Lesa Gardner had filed suit on March 21 for $25,000 for personal injuries and property damages. The Gardner complaint also named Lesa's uninsured motorist carrier, State Farm Mutual Automobile Insurance Company, as a party, stating Melinda was uninsured.

Nationwide filed a declaratory judgment action, pursuant to Rule 57, T.R.C.P., and T.C.A. § 29–14–101, *et seq.*, making Lesa Gardner and State Farm Mutual defendants along with Melinda Shannon. In its complaint Nationwide alleges the policy was in effect on the date of the accident but, as pertinent here, the policy provides: "The Policyholder or other person entitled to protection or someone on his behalf shall: (1) give the Company or its agent written notice of all accidents, occurrences and losses as soon as practicable." The complaint alleges Melinda breached the conditions of the policy set out above by failing to report the accident until almost a year after it happened. It asked the court to find that the policy afforded no coverage as a result of the breach of its conditions.

Melinda, for answer to the complaint, as pertinent here, said she admitted hitting

the car in front of her as a result of her foot slipping off the clutch. She said that after the accident she examined her bumper and the rear bumper of the Gardner automobile and, although they each had a small amount of damage, she did not consider it significant. She questioned the occupants of the car and was told they were not hurt. She attempted approximately six times to call Nationwide on a toll-free number but was unable to reach it. She then tried, that same day, five or six times, to reach Nationwide's local agent by phone but couldn't get through. Since she was unable to reach Nationwide or the agent and since she had given her name and address and the name of her insurance company to the other parties, she "felt that she had done her duty and thought no more about the matter."

Upon the trial of the case the court found the issues in favor of the Defendants. In so doing, he stated he felt it was an insignificant accident and Melinda was correct in not reporting it.

The Plaintiff has appealed, presenting the following issues:

"Whether appellee Melinda E. Shannon had an obligation under the terms of her policy and applicable law to report the accident which is the subject of this lawsuit to her insurer, appellant Nationwide Mutual Insurance Company.

"Whether appellee Melinda E. Shannon's failure to notify appellant Nationwide Mutual Insurance Company of the occurrence of an accident until nearly one (1) year after said accident breached the conditions and provisions of her policy and relieves appellant Nationwide of any obligation to provide coverage for said accident."

Since the two issues are interrelated, they will be considered together. The pertinent testimony relating to what occurred on the day of the accident is that of Lesa Gardner and Melinda Shannon. Ms. Gardner testified she was stopped at a traffic light on Cumberland Avenue and had just started to go forward after the traffic light turned green when her car was struck in the rear by the Shannon car. When asked about the impact, she stated, "It was a pretty good jolt. The car was moved forward some amount. We just jerked." When asked about what happened to her, she said, "My head hit the steering wheel." When first asked if she had told Ms. Shannon about striking her head on the steering wheel, she said:

"A I don't remember if I told her I had struck my head or not. I was holding my neck at the time. I was pretty shaken up.

"Q You were holding your neck at the scene of the accident?

"A Yes, sir."

When her memory was refreshed by her pre-trial deposition, she confirmed she had made the following statement: "She asked me if anybody was hurt and I told her that I hit my head, and I didn't know about the other girls. And the other girls had went and sat down on a bench on the side."

When asked about injuries to other passengers in the car, she said, "But the other person [Robbins] that was injured also had the same type injuries that I had."

She was asked about damage to her car and stated, "There was an indentation on the right side of the bumper about the size of a saucer." "About five inches."

The record further shows, from her testimony and exhibits, that State Farm Mutual had collision insurance on her car. On May 23 it made an estimate of the cost of repairs to her car of $416.18. She had a $50 deductible provision in her policy and State Farm made a cash settlement of $342.62.

Melinda Shannon testified that after the accident she examined her front bumper and "there was a small nick about the size of a nickel." When asked about the damage to the rear bumper of the Gardner automobile, she described it as "a tiny nick." She then testified as follows:

"A Well, I did see a small nick but I wasn't sure if that was from the accident we had just experienced or whether that was already there.

"Q Did you ask Miss Gardner about that nick that you saw as to whether or not

it was old damage or had been caused by this accident?

"A  No, I didn't.

"Q  Do you remember after the accident Miss Gardner telling you that she had hit her head against the steering wheel when this accident happened?

"A  I asked her if she was hurt and she said no.

"Q  Do you remember her saying that she hit her head against the steering wheel?

"A  I don't know.

"Q  Do you remember that she was holding her neck there at the scene of the accident?

"A  No.

"Q  Do you recall that?

"A  No."

When asked if anyone appeared to be injured in the accident, she said, "No. I think there was a—one of the riders—I know that there was a girl that was riding in the middle on the hump and she had bumped her head, but she said she was all right."

She gave a statement to a representative of Nationwide prior to trial in which she described the accident as follows: "I was approaching the intersection, and like I said it had been stopped at the traffic and I was going in a very slow rate of speed and I was getting ready to shift to come to a stop at the intersection and I must have been in 3rd or 2nd gear and when I had depressed the clutch I was wearing very high heels, spike heels and the clutch, my foot had slipped off the clutch. The clutch became stuck between the heel of my shoe and the toe of my shoe and I looked down and I was trying to get my foot free and brake and you know come to a stop and I looked to, took my eyes off the road for a minute and the next thing I know I had bumped the car in front of me."

She further stated that after the accident Ms. Gardner got out of her car "and she was really angry" and "wanted to get the police called." The police were called and filed an accident report. The police officer did not testify but the report indicates there were no personal injuries and damages to the vehicle of "less than $200."

Ms. Shannon testified she gave her name and address and the name of her insurance carrier to both Ms. Gardner and the police officer. She further testified that on the afternoon of the accident she tried to call Nationwide on a toll-free number about six times but each time the line was busy. She said she tried to call the local insurance agent of Nationwide five or six times and couldn't reach him. She testified her reason for making these calls was to find out if she was required to report the accident. No further effort was made to report the accident after the day it occurred. She testified that after the accident she talked with some of her fellow workers and was then asked:

"Q  As a result of those conversations, what did you decide about whether or not this was even an accident?

"A  Well, I decided it wasn't and I was using common sense. I didn't see anything to report."

The Appellant, in its brief, relies upon the cases of *Phoenix Cotton Oil Company v. Royal Indemnity Company*, 140 Tenn. 438, 205 S.W. 128 (1918); *Foreman v. Union Indemnity Company*, 12 Tenn.App. 89 (1928); *Barfield v. Insurance Company of North America*, 59 Tenn.App. 631, 443 S.W.2d 482 (1968); *Osborne v. Hartford Accident & Indemnity Company*, 63 Tenn.App. 518, 476 S.W.2d 256 (1971); and *Hartford Accident & Indemnity Company v. Creasy*, 530 S.W.2d 778 (Tenn.1975) as supportive of its contention.

The *Phoenix Cotton Oil Company* case is the landmark case on the requirement to give the insurer notice. The court, speaking through Chief Justice Neil, said:

"'The promise to insure is not absolute but conditional. The condition is that the notice, whatever it may be and by whomsoever and whenever given, shall be given. It is a condition precedent to the creation of liability or to the life of the

promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action.' "

140 Tenn. 438, 444, 205 S.W. 128.

He further said:

"Nor is complainant relieved of the legal effect of the failure to give notice by the allegations of the bill to the effect that the Royal Indemnity Company was not injured by the delay. At most, it is a matter about which opinions may differ, as to whether any injury was really caused by the delay under the facts stated; but the inquiry is irrelevant; for if the giving of notice was a condition precedent to the right of recovery, the failure to give it prevented any liability from attaching."

*Id.* 445, 205 S.W. 128.

Each of the other cases cited above has followed the principle announced by the *Phoenix* court.

The Appellees, however, rely upon the case of *Munal Clinic v. Applegate*, 38 Tenn.App. 280, 273 S.W.2d 712 (1954); *Transamerica Ins. Co. v. Parrott*, 531 S.W.2d 306 (Tenn.App.1975) and *Reliance Ins. Co. v. Athena Cablevision Corp.*, 560 S.W.2d 617 (Tenn.1977) as supportive of their contention.

In the *Reliance Ins. Co.* case the insured, Athena Cablevision Corp. had entered into a contract with Alabama Steeplejack Service to erect a tower. The contract provided that Alabama Steeplejack would carry all necessary insurance and would hold Athena harmless from all claims arising out of the construction of the tower. One of Alabama Steeplejack's employees was killed. No notice was given to Athena's insurance company until almost a year later when Athena was sued. Our Supreme Court held that, under the circumstances, it was excused from giving notice prior to the suit. The Court, speaking through Justice Fones, said:

"A condition in an insurance policy which requires the insured to give notice of an occurrence 'as soon as practicable' imposes a duty on the insured to give notice when he becomes, or should be-

come, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer. *Transamerica Ins. Co. v. Parrott*, 531 S.W.2d 306 (Tenn.App.1975); *Osborne v. Hartford Accident & Indem. Co.*, 63 Tenn. App. 518, 476 S.W.2d 256 (1972); *Munal Clinic v. Applegate*, 38 Tenn.App. 280, 273 S.W.2d 712 (1954)."

560 S.W.2d 617, 618.

The *Transamerica Ins. Co.* case involved insurance on a leased truck. Transamerica Ins. Co. issued its policy to Mr. Parrott on his truck. Parrott leased the truck to Davis Manufacturing Co. The lease provided Parrott must carry insurance on the truck. Parrott exhibited his insurance policy to Davis. The truck was later involved in an accident while being driven by one of Davis' employees. Notice of the accident was given to Transamerica but no notice was given to Davis' insurance company until some months later when Transamerica declined coverage. Under these circumstances the court held that Davis had given its carrier notice "as soon as practicable." In defining the term "as soon as practicable" the court quoted with approval as follows:

"'The time words in the clause, "as soon as practicable" are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice "as soon as possible." In terms, they require notice "as soon as practicable" and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause.'"

531 S.W.2d 306, 312.

The court concluded that by Davis' notifying its insurance carrier as soon as it

learned of Transamerica's disclaimer, it had met the requirements of the policy.

In the *Munal Clinic* case, a Mr. Applegate had been admitted to the Munal Clinic suffering from alcoholism. Some three days later he escaped from the clinic and was arrested for public drunkenness. He was placed in jail and died that afternoon from a heart attack. Some eight months later the clinic received a letter from the attorneys for the administrator of the estate, making claim for the decedent's death. The clinic then notified its insurance carrier. The insurance company filed a declaratory judgment suit seeking to be relieved of coverage. This court, in affirming the chancellor in holding there was coverage, quoted with approval as follows:

"In 29 Am.Jur., it says:

" 'As a general proposition, an accident which has no reasonable relation to the subject matter of the policy or to the act or omission of the insured need not be reported to a liability insurer.' Sec. 1114, p. 836.

" 'The requirement of a liability policy that notice shall be given on the occurrence of an accident does not require notice of an accidental occurrence where no bodily injury is apparent at the time of the accident, and there is no reasonable ground for believing that a claim for damages will be made, and the duty to give notice does not arise until the subsequent facts would suggest to a reasonably prudent person that a liability might arise.' Sec. 1115, p. 837.

"In 45 C.J.S., Insurance, § 1056, page 1281, it says:

" 'Generally, delay is excusable in the case of an accident which is trivial and results in no apparent harm, or which furnishes no ground for insured, acting as a reasonable and prudent man, to believe at the time that a claim for damages will arise or that the injury is one insured against. In such case notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages.' " 273 S.W.2d 712, 715.

While we agree with the holdings in each of the cases relied upon by the Appellees, we do not think they are controlling under the facts of the case at bar. In each of those cases there was a very legitimate reason for the accident or occurrence not being reported to the insurance carrier. In the case at bar Ms. Shannon had no reason to think that anyone would be held accountable for the accident besides herself and her insurance company. She should have realized that, if a claim were made, she, more likely than not, would be held liable. Although she noticed some damage to the bumper of the Gardner car which she thought might be old damage, she did not inquire of Ms. Gardner about it. She termed the damage to the Gardner car as a "tiny nick" but the collision insurance carrier appraised the damage slightly in excess of $400. When asked if Ms. Gardner told her she struck her head on the steering wheel, she said, "I don't know." She did remember that one of the other passengers had "bumped her head." She described Ms. Gardner as being "very angry" immediately after the accident and requested the police be called to investigate. Although she made 10 to 12 unsuccessful efforts to call Nationwide or its agent on the afternoon of the accident, she made no effort after that to reach either of them. It appears it was after she talked to some of her fellow employees she decided it was not necessary to report the accident.

The quotation from 45 C.J.S. in *Munal Clinic v. Applegate, supra,* we think is somewhat misplaced under the facts of that case, but it is supportive of the Appellees' position. However, we do not think it is controlling in the case at bar. The determination of whether or not an accident is "trivial" must be determined from the facts in each particular case. A review of the rule quoted from 45 C.J.S., *supra,* reveals the accident must not only be "triv-

ial" but it must also result "in no apparent harm" or a reasonably prudent person would believe no claim would arise from it. Webster's New Universal Unabridged Dictionary defines "trivial" as "trifling; of little worth or importance; commonplace." Under the facts of the case at bar, we do not think the accident can reasonably be termed "trivial." Nor do we think it can be said there was no apparent harm. Also, the fact that when Ms. Gardner got out of her car she was "very angry" and insisted on calling the police to investigate the accident, should indicate to an ordinarily prudent person that litigation was probably in the making. Also, the paragraph following the 45, C.J.S. quote in *Munal Clinic* is as follows:

> "Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages. In this connection the test is not a subjective one measured merely by the good faith of insured, but is an objective one, and hence the mere fact that insured believes that an injury resulting from an accident is slight, or that he does not believe that any valid claim will arise out of an accident, is not of itself an excuse for failure to give notice of the accident to insurer."

We think this rule is appropriately applicable under the facts in the case at bar.

There are no reported cases in this jurisdiction which deal directly with the issue involved here. However, we find the case of *Malloy v. Head*, 4 A.2d 875, 90 N.H. 58 (1939) 123 A.L.R. 941 to be in point. In that case a young boy was injured by the insureds' horse and died from the injuries. The insureds did not notify the insurer until some 10 months later when suit was filed. The insurer filed a declaratory judgment suit asking to be relieved of coverage for lack of notice. The insureds insisted they were excused from giving notice because on the day of the accident the boy's father said to them " 'that there was absolutely no blame and that it was purely an accident, and ... we would never hear any more about it.' Moreover, the father said

in the presence of the mother that 'there was no blame involved; that he blamed nobody ... it was just probably an act of God.' " *Id.* 4 A.2d at 878. In sustaining the position of the insurer under these circumstances, the court said:

> "[A]ssume for present purposes that the plaintiffs reasonably believed that neither claim nor suit would arise out of the accident.
>
> "The trouble with the contention of the plaintiffs, as thus given the fullest possible effect, is that they assumed to become the judges of the prospect for claim and suit, whereas one of the purposes of the notice of accident is to afford opportunity to the insurer, the responsible party in case the policy is to continue in effect, to decide that very question and to act in accordance with its own judgment. *Ward v. Casualty Co.*, supra, [71 N.H. 262] pages 267, 268, 51 A. 900. Compare also *Amoskeag Trust Company v. Insurance Co.*, 88 N.H. 154, 159, 162, 185 A. 2." Id. 4 A.2d at 878.

Also, in the case of *Hartford Acc. & Indem. Co. v. Creasy, supra,* our Supreme Court, in denying coverage under a policy for failure to give timely notice, said:

> "The burden of offering an explanation or excuse for failure to give notice must rest heavily upon the insured since he seeks relief from the plain terms of a contract of insurance." 530 S.W.2d 778, 780.

Nor can the Appellee find any support for her decision not to report the accident after discussing it with her fellow employees. It has been held that "sidewalk advice from a friend" or "assurance from relatives that no claim would be filed" are not grounds for failing to report an accident. *State Farm Mutual Automobile Ins. Co. v. Johnson*, 315 A.2d 585 (Del.1973). It has also been held that the views and opinions of third persons who actually witnessed an accident, although valuable, are not sufficient to justify the insured's failure to give notice. *Dun v. Travelers Indemnity Co.*, 123 F.2d 710 (1941).

The issues are found in favor of the Appellant. The judgment of the trial court is reversed and the case is remanded for the entry of a judgment in keeping with this opinion. The cost of this appeal is taxed to the Appellees.

PARROTT, P.J., and FRANKS, J., concur.