**GIBSON GUITAR CORP.**

v.

**TRAVELERS INDEMNITY COMPANY,**
**and Travelers Indemnity Company**
**of Illinois.**

No. 3:95–0526.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 23, 1996.

**330**

Thomas Marion Pinckney, Jr., Nashville, TN, David A. Gauntlett, Irvine, CA, Harold Naill Falls, Jr., Nashville, TN, for plaintiff.

Randall Chadwell Ferguson, Nashville, TN, William C. Morison–Knox, San Francisco, CA, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 18), Plaintiff's Motion for Summary Judgment (Docket No. 26) and Defendants' Motion to Strike Reply Brief (Docket No. 41).

For the reasons more fully stated herein, Defendants' Motion for Summary Judgment (Docket No. 18) is GRANTED and Plaintiff's Motion for Summary Judgment (Docket No. 26) is DENIED. In addition, Defendants' Motion to Strike Reply Brief (Docket No. 41) is DENIED as moot.

The facts of this case are generally undisputed. Plaintiff was covered under four insurance policies with Defendants, two for primary general liability insurance and two for umbrella liability insurance, during the relevant time period.

The primary general liability contracts between Plaintiff and Defendants provide that Plaintiff must notify Defendants "as soon as practicable" of an occurrence or offense which may result in a claim and that Plaintiff must notify Defendants "promptly" of an occurrence which may result in a claim.

The insurance contracts also provide that if a claim is made or suit is brought against Plaintiff, Plaintiff must notify Defendants "as soon as practicable" and that Plaintiff must "immediately" send Defendants copies of any legal papers received in connection with the claim or suit.

The umbrella liability insurance contracts between Plaintiff and Defendants require "prompt written notice of any occurrence or offense which may result in damages payable by this policy." Those contracts also require that if a claim is made or suit brought against Plaintiff which may result in a claim against the insurance, Plaintiff must "immediately" send Defendants copies of any legal papers received in connection with the claim or suit.

All four of the insurance contracts provide that Plaintiff has no right to sue Defendants unless all of the policy's terms have been complied with fully.

In March of 1994, Plaintiff filed a lawsuit against Rich & Taylor, Inc. and others. On April 18, 1994, a counterclaim was filed against Plaintiff in that action. Plaintiff did not notify Defendants of that counterclaim until six months later.

In May 1994, Plaintiff filed a lawsuit against two individuals, Moore and Cummings. On July 22, 1994, a counterclaim was filed against Plaintiff in that action. Plaintiff did not notify Defendants of that counterclaim until three months later.

On October 13, 1994, Plaintiff notified Defendants of the counterclaims in the *Rich & Taylor* and *Moore* actions. On January 30, 1995, Defendants denied coverage based upon coverage questions and untimely notice.

Plaintiff sued Defendants in this case for declaratory judgment and breach of contract. Defendants filed a counterclaim for declaratory judgment. Both Plaintiff and Defendants have now filed motions for summary judgment.

Defendants argue that Plaintiff breached its contractual obligation to give timely notice under the terms of these policies. Because timely notice is a condition precedent to coverage, Defendants contend that there is no coverage under the insurance contracts with Plaintiff as a matter of law.

■ Plaintiff contends that it did give Defendants notice as soon as practicable under the circumstances of this case. It argues that when it received the counterclaims, it "sought to investigate and discover whether any of the charged activities did or could have occurred and to identify if possible the dates or time frames of the charged wrongful activities." In addition, Plaintiff notes that while it was investigating the counterclaims, it was also in settlement discussions with the Counter–Plaintiffs in those cases. Thus, Plaintiff's basic defense to this motion is that its delay is excusable under the circumstances.

Tennessee law [1] is clear that a contractual requirement of notice to an insurer is a condition precedent to recovery under the policy, but such a requirement will not, in every case, defeat a claim for coverage. *Hospital Underwriting Group, Inc. v. Summit Health Ltd.*, 63 F.3d 486, 492 (6th Cir.1995). On the other hand, "Tennessee cases have extensively upheld the insurer's right to deny coverage where there has not been prompt notification." *Allstate Ins. Co. v. Fitzgerald*, 743 F.Supp. 539, 541 (W.D.Tenn.1990). The general purpose of the policy notice provision is to make the insurer aware that the claim may be forthcoming and to provide adequate opportunity for investigation. *Id.* at 542.

Tennessee's general rule is that policy language requiring an insured to notify the insurer of potential liability under a policy "as soon as practicable" imposes a duty on the insured to give notice when the insured becomes, or should become, aware of facts to suggest to a reasonably prudent person that the occurrence or action might reasonably be expected to produce a claim against the insurer. *Hospital Underwriting Group*, 63 F.3d at 492.

■ If the facts are undisputed about the insurance policy's notice requirements and the notice that was given, then the reasonableness of the delay in notifying the insurer is a question of law for the Court. *Id.; see also Lee v. Lee*, 732 S.W.2d 275, 276 (Tenn. 1987).

■ Tennessee courts excuse even extreme delay in providing notice in cases where the insured reasonably believed there would be no liability on the policy or could not have notified the insurer because he did not know of the policy or was not at fault for not having discovered coverage sooner. *Hospital Underwriting Group*, 63 F.3d at 492. In order for ignorance of coverage to excuse such a delay, however, the claimant must show that it exercised due diligence and reasonable care in ascertaining that there was coverage under the policy. *Id.* (citing *Lee*, 732 S.W.2d at 276).

The *Hospital Underwriting* case involved an excess insurance policy which existed beyond the primary malpractice policy carried by the hospital. The hospital believed that the primary coverage was $8 million and did not notify the excess carrier because the estimated jury verdict was in the $300,000–$500,000 range. The defendant doctors, who were covered by the hospital's insurance policies, did not even know of the excess insurance until Hospital Underwriting Group (HUG) denied coverage to the hospital. *Hospital Underwriting*, 63 F.3d at 490.

The jury returned an unexpectedly high verdict of $4 million, after which the Defendants found out that the primary coverage was actually $2 million. Only then did the hospital notify the excess carrier. *Id.* Hence, the lawsuit. The trial court found that the excess carrier was liable on the policy, but the Sixth Circuit reversed, holding:

> A reasonably prudent person who has been sued for wrongful death may be expected to make every effort to ascertain all insurance coverage that may be available to satisfy the claim. [The doctors] could and should have discovered the existence of the

---

1. There is no dispute that Tennessee substantive law controls in this diversity action. *Winning-*

*ham v. North Am. Resources Corp.*, 42 F.3d 981, 985, n. 7 (6th Cir.1994).

excess policy by exercising due diligence and reasonable care.

Summit's asserted ignorance of the policy and good faith belief that the [Plaintiff's] claim would not exceed the limits of the primary insurance coverage cannot excuse Summit's failure to notify HUG sooner.

*Id.* at 493.

The burden of offering an explanation or excuse for failure to give notice must rest heavily upon the insured since he seeks relief from the plain terms of the contract of insurance coverage. *Hartford Accident & Indemnity Co. v. Creasy,* 530 S.W.2d 778, 780 (Tenn.1975). Whether the facts establish a reasonable basis for late notice is determined by all the surrounding circumstances. *North River Ins. v. Johnson,* 757 S.W.2d 334, 335 (Tenn.Ct.App.1988).

In *Allstate Ins. Co. v. Fitzgerald,* a two-year-old child drank a cup apparently filled with floor cleaner which had been left on the insured owner's business premises by the janitor. The insurer was not notified of the accident until some two and one-half years later. The Court granted summary judgment for the insurer, holding that the insured had reason to know or should have known that her insurance company would possibly be required to defend or indemnify against this claim, thereby precipitating a need to notify Allstate. *Allstate,* 743 F.Supp. at 542.

Similarly, in *Lee v. Lee,* the court found no coverage where the injured passenger in an uninsured motorist's automobile failed to give notice to the insurer for some ten months after the accident. *Lee,* 732 S.W.2d at 277. The court stated:

Under the undisputed facts of this case, however, there is no doubt that an ordinarily and reasonably prudent person would have known that the event might reasonably be expected to produce a claim against the insurer.... Likewise, any contention that the plaintiff's ignorance of policy provisions affording coverage for injuries she sustained while riding in someone else's car is no excuse as a matter of law under the circumstances of this case

for failing to comply with the notice provisions of the policy.

*Id.*

Here, there is no dispute that the insurance policies at issue required notice "as soon as practicable," "promptly," and "immediately." There is also no dispute that Plaintiff waited six months after the first counterclaim was filed and three months after the second counterclaim before it notified Defendants of those claims.

Given the Tennessee law which holds that an insured must give notice when it becomes aware of a potential claim, the Court finds that Plaintiff had an obligation to notify Defendants promptly when the counterclaims were filed against it. Plaintiff's assertion that it had to investigate the claims falls short of a reasonable excuse. The very purpose of the notice requirement is to give the insurance companies opportunities to investigate.

In *Nationwide v. Shannon,* 701 S.W.2d 615 (Tenn.Ct.App.1985), the plaintiffs argued that they were excused from giving notice because they thought there would be no liability. In sustaining the position of the insurer, the court said:

"The trouble with the contention of the plaintiffs, as thus given the fullest possible effect, is that they assumed to become the judges of the prospect for claim and suit, whereas one of the purposes of the notice of accident is to afford opportunity to the insurer, the responsible party in case the policy is to continue in effect, to decide that very question and to act in accordance with its own judgment."

*Nationwide,* 701 S.W.2d at 620 (citations omitted). Similarly here, Plaintiff seems to argue that it had a duty to judge the viability of the claims before notifying the insurer.

Plaintiff wrongly argues that notice need not be given until the insured determines that the claim is actually covered. *Lee v. Lee* held that notice must be given if "the event for which coverage is sought *might reasonably be expected to produce a claim against the insurer.*" *Lee,* 732 S.W.2d at 276 (emphasis added).

As quoted by the Tennessee Court of Appeals:

"Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages. In this connection the test is not a subjective one measured merely by the good faith of insured, but is an objective one, and hence the mere fact that insured believes that an injury resulting from an accident is slight, or that he does not believe that any valid claim will arise out of an accident, is not of itself an excuse for failure to give notice of the accident to insurer."

*Nationwide,* 701 S.W.2d at 620 (citations omitted).

Plaintiff asserts that its delay is distinguishable from the majority of the Tennessee authorities on notice because "the counterclaims present no definitive specific event that would trigger consideration of insurance coverages." Yet, the filing of the counterclaim is clearly such a specific event. If Plaintiff had any question about a *potential* claim, that question became clear when the *actual* claim was filed.

For all these reasons, the Court finds that the notice given by the Plaintiff corporation, under the circumstances of this case, was untimely. Plaintiff has therefore failed to meet a condition precedent to coverage [2] under the subject insurance policies, and Defendants are entitled to judgment as a matter of law.

Given the Court's ruling on Defendants' Motion for Summary Judgment, it need not reach the issues raised by Plaintiff's Motion for Summary Judgment, and that Motion (Docket No. 26) is DENIED.

Similarly, the Court DENIES Defendants' Motion to Strike Reply Brief (Docket No. 41) as moot.

It is so ORDERED.

---

[2]. Plaintiff argues that an insurer's unconditional denial of liability waives the policy provisions as to notice. Here, notice was given on October 13, 1994. Defendants did not deny coverage until January 30, 1995. The Court finds that Defendants' denial of coverage after untimely notice was given is not a waiver of the notice requirement.